ELIZA J. ALDRICH

*v.*

METROPOLITAN WEST SIDE ELEVATED RAILROAD CO.

*Opinion filed February 21, 1902—Rehearing denied April 3, 1902.*

1. CONSTITUTIONAL LAW—*provision against damaging property for public use considered.* Under the constitutional provision against damaging private property for public use without just compensation, no recovery can be had unless there has been some direct physical disturbance of a right which the plaintiff enjoys in connection with his property and which gives it an additional value, and by reason of such disturbance the plaintiff has sustained a special damage in excess of that sustained by the public generally. (*Rigney* v. *City of Chicago,* 102 Ill. 64, followed.)

2. RAILROADS—*when property is not "damaged" by construction and operation of elevated railroad.* If an elevated railroad, occupying its own land or right of way except where it crosses public streets, is carefully constructed and operated, no recovery, under the constitutional provision against damaging private property for public use, can be had by the owner of property located near the tracks because of the usual noise, vibration, interference with light, air and view necessarily attendant upon the proper operation of the railroad and suffered by such owner in common with the public generally. (*Chicago, Peoria and St. Louis Railway Co.* v. *Leah,* 152 Ill. 249, and *Chicago, Milwaukee and St. Paul Railway Co.* v. *Darke,* 148 id. 226, distinguished and explained.)

MAGRUDER, J., does not concur.

APPEAL from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

PAM, CALHOUN & GLENNON, and EDWIN B. HARTS, (ALBERT E. DACY, of counsel,) for appellant:

For consequential damage resulting from the construction and operation of a railroad, which depreciates the value of property, no part of which has been taken under the power of eminent domain, and which is peculiar to it and different and in excess of that sustained by the public, a recovery can be had under the constitution of 1870, even if there is no physical interference with the *corpus,* and all past, present and future damages caused

by the lawful operation of the road must be assessed in one proceeding. *Rigney* v. *Chicago*, 102 Ill. 64; *Railroad Co.* v. *Ayres*, 106 id. 511; *Railroad Co.* v. *Loeb*, 118 id. 203; *Railroad Co.* v. *Scott*, 132 id. 429; *Railway Co.* v. *Darke*, 148 id. 226; *Railway Co.* v. *Leah*, 152 id. 249.

In an action brought by a property owner against a railroad company to recover damages for depreciating the market value of his property, caused by the construction and operation of a railroad, the measure of damages, under the constitution of 1870, is the difference in value of the property before and after the acts complained of, and if there is no difference he has sustained no damage for which he can expect compensation. *Dupuis* v. *Railway Co.* 115 Ill. 97; *Railway Co.* v. *Stickney*, 150 id. 362; *Railroad Co.* v. *Atterbury*, 156 id. 281.

Evidence of any interference with an abutting property owner's easements of light and air in a street is admissible in a suit of this character to aid the jury in determining whether or not the market value of the property has been depreciated by the construction and operation of the railroad. New York El. Railroad Cas. sec. 12; Lewis on Eminent Domain, (2d ed.) 170, 252; *Railway Co.* v. *Brooks*, 90 Ill. App. 173; *Barrows* v. *Sycamore*, 150 Ill. 588; *Field* v. *Barling*, 149 id. 565; *Kotz* v. *Railroad Co.* 188 id. 578.

Closely connected with the easement of light and air which an abutting property owner has in the street, is the right to an unobstructed view therein. Evidence of any interference with this right, caused by the construction and operation of a railroad, is properly admitted in this kind of a suit, to aid the jury in determining whether or not the property has been depreciated by the construction and operation of the railroad. New York El. Railroad Cas. sec. 12; Dillon on Mun. Corp. (4th ed.) sec. 734a, p. 889; *Barrows* v. *Sycamore*, 150 Ill. 588; *Jaynes* v. *Railway Co.* 74 N. W. Rep. 67; *Railroad Co.* v. *Stickney*, 150 Ill. 362; *Railroad Co.* v. *Springer*, 171 id. 170; *Kotz* v. *Railroad Co.* 188 id. 578; *Wilson* v. *Railroad Co.* 30 N. Y. Supp. 547

Evidence of the vibration of neighboring property, caused by the operation of a railroad, is admissible to aid the jury in determining whether or not the market value thereof has been depreciated by such operation. There can also be no doubt of the liability for all actual physical damage sustained, such as the cracking of walls. New York El. Railroad Cas. sec. 12; *Railroad Co.* v. *Loeb,* 118 Ill. 203; *Railroad Co.* v. *Haller,* 82 id. 208; *Railway Co.* v. *Hall,* 90 id. 41; *Railroad Co.* v. *Wieczorek,* 51 Ill. App. 498; *Railroad Co.* v. *Brooks,* 90 id. 173.

The cases sustaining awards of damages for consequential injuries resulting from the construction and operation of a railroad have been decided upon the theory that the acts complained of are done in a careful and prudent manner and are not the result of negligence. *Drucker* v. *Railway Co.* 12 N. E. Rep. 568; *Morton* v. *Mayor,* 35 id. 490; *Railway Co.* v. *Hazels,* 42 N. W. Rep. 93; *Cooper* v. *Randall,* 53 Ill. 24; *Railroad Co.* v. *Loeb,* 118 id. 203; *Insurance Co.* v. *Heiss,* 141 id. 35; *Railway Co.* v. *Leah,* 41 Ill. App. 584; 152 Ill. 249.

ADDISON L. GARDNER, and FRANCIS W. WALKER, (WILLIAM W. GURLEY, of counsel,) for appellee:

Injuries to property arising out of and unavoidably incident to the operation, in a careful and skillful manner, of a railroad properly constructed are *damnum absque injuria.* *Railroad Co.* v. *Brooks,* 90 Ill. App. 173; *Railroad Co.* v. *Grabill,* 50 Ill. 241; *Fairbank Co.* v. *Nicolai,* 167 id. 242; *Chicago* v. *Union Stock Yards Co.* 164 id. 224; *Railroad Co.* v. *Joliet,* 79 id. 25; *Railroad Co.* v. *Cogswell,* 44 Ill. App. 388; *Railway Co.* v. *Hall,* 90 Ill. 42; *Rigney* v. *Chicago,* 102 id. 64; *Chicago* v. *Building Ass.* 102 id. 379; *Railroad Co.* v. *Ayres,* 106 id. 511; *Parker* v. *Catholic Bishop,* 146 id. 158; *Chicago* v. *Burcky,* 158 id. 103; *East St. Louis* v. *O'Flynn,* 119 id. 200; *Railroad Co.* v. *Scott,* 132 id. 429; *Frazer* v. *Chicago,* 186 id. 480.

The constitution of 1870 placed a public or *quasi* public corporation upon the same footing with relation to the

use of its property as that of a private property owner, with respect to other property in the neighborhood. That is, its liability is the same, under the constitution of 1870, as that of a private owner at common law. Randolph on Eminent Domain, sec. 154; *Rigney* v. *Chicago*, 102 Ill. 64; *Railway Co.* v. *Meadows*, 11 S. W. Rep. 145; *Jordan* v. *Benwood*, 42 W. Va. 312; *Rude* v. *St. Louis*, 93 Mo. 408; 6 S. W. Rep. 257; *Bridge Co.* v. *Geisse*, 35 N. J. L. 558; *Austin* v. *Railway Co.* 34 S. E. Rep. 851; *Marchant case*, 119 Pa. St. 541; *Peel* v. *Atlanta*, 95 Ga. 138.

Under the constitution of 1870 there must be physical interference either with the land or some right growing out of or connected with the land, which the owner enjoys in connection with his property and which gives to it an additional value. *Rigney* v. *Chicago*, 102 Ill. 64; *Austin* v. *Railway Co.* 34 S. E. Rep. 852.

Mere inconvenience in the use of property caused by the proximity of a public improvement forms no basis of a recovery for damage, even though the property may be lessened in value. *Stone* v. *Railroad Co.* 68 Ill. 394; *Chicago* v. *Union Stock Yards Co.* 164 id. 224; *Railroad Co.* v. *Hall*, 90 id. 42; *Gilbert* v. *Railway Co.* 22 Pac. Rep. 814; *Proprietors of Locks* v. *Railroad Co.* 10 Cush. 385; *Presbrey* v. *Railway Co.* 103 Mass. 1; *Parker* v. *Catholic Bishop*, 146 id. 158; *Rude* v. *St. Louis*, 6 S. W. Rep. 257.

The noise necessary to the operation of a railroad is a mere inconvenience to persons and is not an interference with a property right growing out of the land. *Stone* v. *Railroad Co.* 68 Ill. 394; *Proprietors of Locks* v. *Railroad Co.* 10 Cush. 385; *Presbrey* v. *Railway Co.* 103 Mass. 1; *Railroad Co.* v. *Hall*, 90 Ill. 42.

Where the damage is the same in kind, only differing in degree from that suffered by the general public, there can be no recovery by a private individual. *Rigney* v. *Chicago*, 102 Ill. 64; *Chicago* v. *Building Ass.* id. 379; *Railroad Co.* v. *Ayres*, 106 id. 511; *Parker* v. *Catholic Bishop*, 146 id. 158; *East St. Louis* v. *O'Flynn*, 119 id. 200; *Chicago* v. *Burcky*,

158 id. 103; *Rochette* v. *Railway Co.* 20 N. W. Rep. 140; *Rude* v. *St. Louis*, 6 S. W. Rep. 257.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal by the plaintiff below from a judgment of the circuit court rendered in bar of her action and for costs. The question presented involves the construction of the first clause of section 13 of article 2 of the constitution: "Private property shall not be taken or damaged for public use without just compensation."

In 1888 the plaintiff, owning two lots fronting west on Ashland boulevard, in Chicago, erected thereon an expensive apartment building. In 1892 the defendant below obtained, by purchase and condemnation, a right of way running east and west through the same block, and located and thereafter constructed on such right of way north of plaintiff's premises its elevated railway, and has since 1895 run its cars on said railway, propelled by electricity, crossing Ashland boulevard thirty-one feet north of plaintiff's building. The road consists of four tracks on a steel structure elevated fourteen and one-half feet from the ground, over which 1554 trains, of from three to five cars each, pass plaintiff's property and cross the boulevard daily. To recover damages to her property caused by the construction and operation of defendant's road the plaintiff brought this action, and as grounds of recovery alleged in the first count of her declaration that by the construction and operation of the road the street is darkened, the light cut off from her house, the view down the boulevard obstructed and the entrance to the premises interfered with and rendered unsafe. The second count charges that on account of the darkening of the boulevard and the running of trains over it the premises are deprived of air, ventilation and quiet, passage along the boulevard to and from the premises has been and is interrupted and access thereto has been impaired, and the soil and buildings are disturbed, vibrated, shaken

and damaged, and trains are operated over the structure with great noise, caused by rumbling and squeaking of wheels, and other noises connected with the operation of an elevated railroad, so as continually to disturb and destroy the peace and quiet of the premises. The third count charges that the appellee is a railway corporation authorized by the laws of this State to take and damage private property necessary for the construction and operation of its road upon making just compensation therefor, and that it has constructed and is operating its road within nineteen feet of appellant's property and has damaged it in the sum of $20,000, but has made her no compensation, as required by the constitution and laws of Illinois. To this declaration the appellee pleaded the general issue. Upon the trial the court excluded the evidence and directed the jury to find defendant not guilty.

There was no charge or proof that the road was negligently constructed or operated, but only that by the construction and operation of the road so near to appellant's property and across the public street there, her property was damaged for public use, within the meaning of the constitution, for which no compensation has been made and for which she is entitled to recover. The road was located and constructed by the company in accordance with lawful authority and upon its own land or right of way, and not in any public street or alley, except where it crosses streets or alleys by authority lawfully granted. For the purposes of this case it must be assumed, from the record, that it was carefully constructed and carefully operated, and that by such construction and operation it did not injuriously affect the property of others, or the property in question of the plaintiff, any more than any such property would be affected in any case by the construction and operation of such a road so near to such property. Ashland boulevard, running north and south in front of plaintiff's property, was one hundred feet wide and had been paved and beautified as a

residence street. Congress street runs east and west fifty
feet south of plaintiff's premises, there being another
building between plaintiff's and Congress street. The
record shows that no unusual noise or vibration of plain-
tiff's property was caused by the company in the matter
complained of. Access to her property from any public
street or alley was not cut off or injuriously affected. In
short, whatever damages were sustained by the plaintiff
were such, and only such, as were common to the public
generally.

In *Rigney* v. *City of Chicago*, 102 Ill. 64, this court al-
lowed a recovery against the city for damages to the
plaintiff's property caused by the construction of a via-
duct, on the ground that it cut off access from the public
street to plaintiff's property. In that case the court dis-
cussed the rule at common law, and said (p. 70): "It is a
well recognized principle that where a thing not *malum
in se* is authorized to be done by a valid act of the legis-
lature, and it is performed with due care and skill, in
strict conformity with the provisions of the act, its per-
formance cannot, by the common law, be made the ground
of an action, however much one may be injured by it,"—
citing cases. And further said, in substance, that under
the constitution of 1848, which prohibited the taking of
private property for public use without just compensa-
tion, any actual physical invasion or direct physical in-
jury to property in such cases was regarded as a taking.
Then, after a further discussion of the question at issue in
that case and a review of previous cases, it was further
said (p. 80): "The question then recurs, what additional
class of cases did the framers of the new constitution in-
tend to provide for which are not embraced in the old?
While it is clear that the present constitution was in-
tended to afford redress in a certain class of cases for
which there was no remedy under the old constitution,
yet we think it equally clear that it was not intended to
reach every possible injury that might be occasioned by

a public improvement. There are certain injuries which are necessarily incident to the ownership of property in towns or cities, which directly impair the value of private property, for which the law does not and never has afforded any relief. For instance, the building of a jail, police station, or the like, will generally cause a direct depreciation in the value of neighboring property, yet that is clearly a case of *damnum absque injuria.* So as to an obstruction in a public street. If it does not practically affect the use or enjoyment of neighboring property, and thereby impair its value, no action will lie. In all cases, to warrant a recovery it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. In the absence of any statutory or constitutional provisions on the subject the common law afforded redress in all such cases, and we have no doubt it was the intention of the framers of the present constitution to require compensation to be made in all cases where, but for some legislative enactment, an action would lie by the common law."

That case, ever since its decision, has been regarded as laying down the proper rule on the subject, and is, we think, conclusive of the case at bar. Here there has been no direct physical disturbance of any right, public or private, which the plaintiff enjoys in connection with her property and which gives to it an additional value, whereby she has sustained a special damage in excess of that sustained by the public generally. The damages sued for are of the same kind and character as those sustained by the public generally in the ownership of property, which property may have been lessened in value by the construction and operation of the road. Noise, the obstruction of light and of view, are necessary inci-

dents of the construction and operation of such roads, and if every property owner could recover in all such cases, the making of public improvements would become practically impossible. This road is not constructed along the street in front of the plaintiff's property, thus injuring or destroying a public right which she enjoyed in connection with her property, but, as before said, it is constructed on its own land or right of way. Therefore, what the rights of an abutter would be in such a case it is not necessary to consider. In *Illinois Central Railroad Co.* v. *Grabill,* 50 Ill. 241, in speaking of the annoyances of running engines, the escape of steam, etc., near the plaintiff's premises, this court said (p. 244): "Such consequences of the construction and use of railroads must be borne by all living near them, without complaint and without hope of redress, for they are inseparable from the purposes and objects of such structures, but that a recovery can and should be had for such damages as arise out of the careless and negligent acts of a railroad company in regard to any usual and necessary appurtenance to their road cannot be denied." (*City of Chicago* v. *Union Stock Yards,* 164 Ill. 224.) A railroad constructed and operated by authority of law can not be a nuisance, and there was no right of action at common law for the depreciation in value of property so caused. The company is liable for negligent or willful injury, as others are, but not for doing the things which the law authorizes it to do. Nor can we agree that the constitution of 1870 gives, or was intended to give, a remedy for all incidental losses, or for the depreciation of the value of property, caused by the construction and operation of railroads in the vicinity, but as said in the *Rigney case,* it was intended only to restore a remedy which existed at common law but which had been denied by legislation and the constitution of 1848.

We are referred to *Chicago, Peoria and St. Louis Railway Co.* v. *Leah,* 152 Ill. 249, and *Chicago, Milwaukee and St. Paul*

*Railway Co.* v. *Darke*, 148 id. 226, as announcing a different doctrine.   There may be in the opinions in those cases some expressions which, considered alone and without reference to the cases there under consideration, might tend to support the views of counsel for appellant, but those decisions are in full accord with the *Rigney case* and with this, and the *Rigney case* was cited as authority in the *Leah case.*  In the latter case the premises of plaintiff had their front on a narrow street twenty feet in width, and the defendant's railroad crossed this street diagonally, opposite the plaintiff's premises, within six and one-half feet thereof, and said street afforded the only approach to said premises.   In that case it is clear that there was a direct physical disturbance of a public right which the plaintiff enjoyed in connection with his property, which right gave to it an additional value, and that he sustained special damages with respect to his property different from and in excess of that sustained by the public generally.  While there may not have been a direct physical injury to the *corpus* of the property, there was such an injury to the owner's right of access to and use and enjoyment of the property which was not common to the public generally.  So, too, in the *Darke case.*  While the road was not located in the public street but on the company's right of way, yet the *gravamen* of the action was that cinders, ashes and smoke were thrown and blown on to the plaintiff's premises in a considerable amount and that the value of her premises was depreciated by that cause.   It cannot, therefore, be said that there was no direct physical injury to the property, or of a right which she enjoyed therein, which caused special damages to her which were not suffered by others of the public, generally, in the use of their property.   In the case at bar the trains were run by electricity, and it is not contended that there were thrown or deposited on the plaintiff's property any cinders or other material substances, nor that there was any unusual noise or vibra-

tion or jarring of the earth. Whatever damage plaintiff may have suffered in depreciation of the value of her property was of the same kind and character as that suffered by the public generally, and common to the owners of property in a large city, where noise, confusion and the disturbance of quiet appear to be the necessary results of the activities of city life.

The proof admitted, and that offered, on the trial in this case would not sustain in full the allegations of the declaration, which in some of the counts stated a good cause of action, and what we have said is based upon the record as it stood on the trial of the case and as we have stated it to be. For example, there was no proof that entrance to plaintiff's premises from the street was interfered with or rendered unsafe.

The judgment will be affirmed.     *Judgment affirmed.*

Mr. JUSTICE MAGRUDER does not concur.