## Victorine Griveau v. South Chicago City Railway Company.

### Gen. No. 12,513.

1.  DAMNUM ABSQUE INJURIA—*when injury to real property is.* Where there is no physical taking and no charge of negligent construction or maintenance, damages cannot be recovered for injury to real property arising by reason of noise from the construction and maintenance by a traction company, upon its own land, of a station and loop.

Action for damages to real property: Error to the Superior Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the October term, 1905. Affirmed.    Opinion filed December 13, 1906.

EDWIN BEBB and F. H. CULVER, for plaintiff in error.

JAMES W. DUNCAN and C. LeROY BROWN, for defendant in error.

MR. JUSTICE ADAMS delivered the opinion of the court.

Plaintiff in error was plaintiff and defendant in error defendant in the trial court. The plaintiff in her declaration avers, in substance, that she is the owner in fee simple of lot 6 in F. B. Law's subdivision of the E. half, west of the Illinois Central railway, of the N. E. quarter of section 23, township 38 north, range 14 east of the third principal meridian, in the city of Chicago, and of a certain dwelling house and stores situated on said premises, of which she and her tenants, prior to the grievances complained of, had peaceable possession. Defendant purchased and became possessed of a piece or parcel of land next to and adjoining plaintiff's said premises, and, by virtue of an ordinance of the city of Chicago, passed June 8, 1896, authorizing defendant to construct and operate a street railway in Sixty-fourth street and Madison avenue, defendant entered upon and wrongfully constructed a railway loop over, upon and around said premises of the defendant, and has continuously operated street cars upon and around said loop portion of said railway, and defendant, in so doing, has permitted loud noises to be made and maintained; and defendant has constructed switches and turnouts in connection with and as part of said loop, and in the operation of its cars has caused plaintiff's premises to be greatly shaken, jarred and vibrated. And defendant has constructed a depot or waiting room on its said premises, with platforms and means of boarding its cars, which attracts large crowds of passengers and others, who make boisterous, disturbing and disorderly noises, and defendant has not maintained order on its said premises, etc. The curve connecting defendant's track on Madison avenue with said loop is contrary to law and said ordinance, and is directly in front of plaintiff's premises, thereby cutting off and

obstructing the entrance to said stores and premises of plaintiff and preventing ingress and egress to and from said premises. Here follow averments of damage.

At the conclusion of the plaintiff's evidence the court, on the defendant's motion, instructed the jury to find the defendant not guilty; the jury rendered a verdict accordingly, and the court, after overruling plaintiff's motion for a new trial, rendered judgment on the verdict.

The bill of exceptions purports to contain the substance of all the evidence, and is so certified by the trial judge. The plaintiff introduced evidence tending to prove that she had been in possession and occupation of the premises at numbers 6327 and 6329 Madison avenue, in the city of Chicago, from 1889 till 1902. The premises numbered as stated are between Sixty-third and Sixty-fourth streets, which are east and west streets, and are on the east side of Madison avenue, a north and south street.

The evidence showed that the premises at 6327 and 6329 Madison avenue had a frontage of about fifty feet on Madison avenue and extended east therefrom to the right of way of the Illinois Central Railroad Company, the west line of which said right of way was forty-three and one-half feet from the rear end of the building upon the premises at 6327 and 6329 Madison aveune; that upon said right of way of the Illinois Central Railroad Company were eight railroad tracks, over which passed daily a large number of freight, through passenger and local suburban passenger trains of the Illinois Central Railroad, Michigan Central Railroad and Big Four Railroad; that about 240 feet north of the north line of the premises at 6327 and 6329 Madison avenue was the elevated railroad of the South Side Elevated Railroad Company, over which said elevated railroad passed daily a large number of passenger trains; that

underneath said elevated railroad on Sixty-third street were two tracks of the Chicago City Railway Company, upon which were run daily a large number of street cars, all of which railroads were so operated prior to 1895. The evidence also showed that Madison avenue in about 1892, and later during the World's Fair of 1893, became a business street between Sixty-third street and Sixty-fourth street; that in 1889 a two-story frame house was built by plaintiff upon the premises of 6327 and 6329 Madison avenue, to be used as a dwelling house; that in 1892 the said frame building was raised and one-story brick walls were placed under said frame building by plaintiff, making the ground floor of said building into two small stores. The evidence also showed that in 1896 the defendant bought lots immediately north of the premises at 6327 and 6329 Madison avenue, which said lots bought by defendant have a frontage on Madison avenue of one hundred feet; that said defendant thereupon constructed upon said lot a waiting room, surrounded by a loop track connected with the street car tracks of the defendant company in the center of Madison avenue by turn-out tracks, all of which is shown upon certain plats in evidence; that defendant thereafter operated cars around said loop, and used its lot as a terminal station in the operation of its street railway; that in the usual course of things cars entered on the north side of said loop and stopped before starting on the south side of said loop near Madison avenue.

The evidence also tended to prove that street cars were operated on the loop, on the defendant's premises, at all times of the day and until late at night, and, at intervals, all night, and that bells were rung on the cars before they were started from the loop; and that the cars, in passing around the loop, sometimes caused the wheels to bind on the rails, which produced a screeching noise, at times when defend-

ant had neglected to have the rails greased, and so the rails were dry. The evidence also tended to show that passengers and other persons intending to become passengers of defendant sometimes came upon said premises of defendant and the public street adjacent thereto and were disorderly with respect to shouting and making boisterous noises, and that sometimes, on Sunday mornings during the fishing and hunting season, a considerable number of men assembled at said loop terminal station and on the public street adjacent thereto, waiting to become passengers going to the outskirts of the city for the purpose of hunting and fishing, and that they created noises that disturbed the rest and quiet of the plaintiff and her tenants while she was occupying the said premises at 6327 and 6329 Madison avenue.

There was no evidence that any servant, agent or employe of the defendant ever made any of the noises or disturbances above mentioned, or that defendant, or any of its officers, agents or employes, encouraged or negligently permitted the same. The foregoing evidence tending to prove noises was excluded by the court, on the defendant's motion. The court also excluded on defendant's motion evidence offered by the plaintiff tending to prove that noises were heard at 6327 and 6329 Madison avenue from the passage of cars over the frogs and turnout tracks in Madison avenue, connecting the defendant's main tracks in that avenue with the loop track. Certain witnesses called by the plaintiff testified that the construction of the loop, the operation of cars over the same, and over the track leading from the main tracks on Madison avenue to the loop, the conduct of passengers on the cars, and on the defendant's premises, and the public street adjacent thereto, depreciated the value of the plaintiff's property to sums ranging from $3,000 to $5,000. These witnesses were the only witnesses who testified to de-

preciation in value of plaintiff's property. Each of the witnesses who testified as aforesaid made an estimate of the damage, and each of them was asked, on cross-examination, to specify the elements or items which he took into consideration, in making his estimate, and each of them specified the following:

"1. The noise made by cars, in passing over the curved turnout track connecting defendant's main tracks in the center of Madison avenue with the commencement of the loop on defendant's property, at the east line of Madison avenue, said noise being made while the said cars were wholly in the public street.

"2. Probable loss of trade by stores at 6327 and 6329 Madison avenue, arising from a possible fear of parents to send their children to such stores across defendant's track on Madison avenue.

"3. Boisterous shouting and disorderly conduct by passengers of defendant, and by persons intending to become such passengers, while on defendant's cars and defendant's premises and the public street adjacent thereto.

"4. Interference with driving up to the premises at 6327 and 6329 Madison avenue, by reason of the existence of a track properly constructed and even with the surface of the street, the said track connecting defendant's main track in the center of Madison avenue with the loop track on defendant's premises."

The defendant, by its counsel, asked each of said witnesses to separate the damages which he estimated resulted from each of the four items or elements above enumerated, but each of said witnesses testified he could not divide up the damages or distinguish between the different causes thereof; and each of said witnesses testified he could not apportion the damage he estimated resulted from any or either of the elements he enumerated, and that he could not give the portion of said damages which he estimated resulted from any of said elements, either by percentage, or by dollars and cents, or by aliquot parts, and the court,

on defendant's motion, struck out all the testimony of said witnesses as to the depreciation in value of the premises 6327 and 6329 Madison avenue.

No ordinance of the city of Chicago was put in evidence, nor was there any evidence that the operation of the cars on the loop on defendant's premises caused any vibration or jarring of the building at 6327 and 6329 Madison avenue, and it was admitted by the plaintiff's attorney, in open court, that no negligence in the construction, operation or maintenance of defendant's loop, or terminal premises, or in the operation of defendant's cars or business, was charged or claimed by the plaintiff.

The questions presented by the assignments of error are whether the court erred in striking out the evidence of noises made by passengers and intended passengers on the premises of the defendant; whether the court erred in striking out the evidence of noises made by the operation of the defendant's loop or its road in the public street; whether the court erred in striking out the evidence in relation to depreciation in value of plaintiff's premises; and whether the court erred in directing a verdict for the defendant.

It is objected by counsel for the defendant that the evidence failed to prove that plaintiff was the owner of lot 6, described in the declaration; that no evidence tended to prove that the premises 6327 and 6329 Madison avenue are identical with lot 6. But, in view of the conclusion to which we have arrived, we do not find it necessary to pass on this question, and will consider the case as if the premises known as numbers 6327 and 6329 Madison avenue are identical with lot 6, and are owned by the plaintiff.

It is averred in the declaration that the railway in Madison avenue was constructed and operated by virtue of an ordinance of the city of Chicago, and it was admitted by the plaintiff, in open court, on the trial, that she did not claim that there was any negligence in the construction, operation or maintenance of the

defendant's loop, or terminal premises, or in the opera-
tion of defendant's cars or business. The evidence
shows that the loop was wholly on the defendant's
premises. A plat put in evidence, drawn to the scale
of sixteen feet to the inch, of Madison avenue between
Sixty-third and Sixty-fourth streets, shows two tracks
in Madison avenue, the west rail of the west track,
which is nearest to plaintiff's premises, being a little
more than thirty-two feet, by the scale, from the plaint-
iff's premises, and also showing curves or turnouts
from the tracks, connecting with the loop on the defend-
ant's premises. As no improper or negligent construc-
tion is charged, it must be presumed that these curves
or turnouts are properly constructed, and are not ele-
vated above the surface of the street, so as to be an
obstacle to travel, and the plaintiff's witnesses so as-
sumed. The following plat, taken from the printed
argument of counsel for the plaintiff, shows fairly the
loop and connecting curves:

Griveau v. So. Chicago City Ry. Co.

PLAT OF LOCATION

The plat, which was put in evidence by the plaintiff, shows that properly constructed curves, connecting the loop with the main tracks, cannot interfere with ingress to or egress from the plaintiff's property. We are clearly of opinion that there could be no recovery against defendant on account of the noises on defendant's loop made by passengers or persons intending to become such, on defendant's premises, or on the public street, or on account of the "screeching noise" made by the wheels of the cars on the loop rails, when the rails were left ungreased, or by reason of the evidence that noises

were heard on the plaintiff's premises, occasioned by
the cars passing over the frogs and turnout tracks con-
necting defendant's main tracks with the loop tracks,
and that the court did not err in striking out the evi-
dence as to said noises. In Aldrich v. W. Side El.
Ry. Co., 195 Ill. 456, it appeared that the plaintiff's
lot fronted west on Ashland avenue, in Chicago, about
nineteen feet south of the railway company's right of
way, which right of way lay east and west and across
Ashland avenue, which is a north and south street.
The tracks of the company were elevated, on a steel
structure, fourteen and one-half feet from the ground.
It was claimed that "trains are operated over the
structure with great noise, caused by rumbling and
squeaking of wheels, and other noises connected with
the operation of an elevated railroad, so as continually
to disturb the peace and quiet of the premises." The
court says: "The damages sued for are of the same
kind and character as those sustained by the public
generally, in the ownership of property, which prop-
erty may have been lessened in value by the construc-
tion and operation of the road. Noise, the obstruction
of light and of view, are necessary incidents of the
construction and operation of such roads, and, if every
property owner could recover in all such cases, the
making of public improvements would become prac-
tically impossible." This was said with reference
to the construction and operation of the railroad
company's road on its own right of way, and is ap-
plicable to the defendant's loop on its own premises.
As to the curves outside the loop connecting the main
tracks in Madison avenue with the loop, there is no
evidence of any noise which would warrant a recov-
ery. The evidence is merely "that noises were heard
in the premises at 6327 and 6329 Madison avenue,
from the passage of cars over the frogs and turnout
tracks in Madison avenue, connecting defendant's
main tracks on Madison avenue with said loop track."

The witnesses as to depreciation in value of the plaintiff's property, by reason of the construction and operation of the defendant's railway, having included in their estimate of such depreciation elements for which there could be no recovery, and not having been able to testify as to the depreciation, without including such non-actionable elements in their estimates, the court properly excluded all their testimony. In City of Chicago v. Spoor, 190 Ill. 340, each of the plaintiff's witnesses testified, on the direct, to the depreciation in value of plaintiff's property, by reason of the construction of a viaduct. On cross-examination as to the basis of their estimates of depreciation, it appeared that the most prominent element of damage in their minds was the character of the traffic and travel on Halsted street (on which street the plaintiff's lots fronted) after the viaduct was built, and the fact that fewer people came from the Stock Yards upon the street, so that less business could be done there. The witnesses were asked to exclude this element from their estimates, but were unable to do so, or to divide up the damages or distinguish between the different elements on which their estimates were based, and the defendant moved to strike out their evidence as to the depreciation in market value of the plaintiff's property, which motion the court denied. On appeal, the court held that the plaintiff had no legal right to have travel and traffic on the street remain as it was before the construction of the viaduct, and, therefore, that the decrease of such travel and traffic, by reason of such construction, was no infringement of any right of the plaintiff, and no recovery could be had for damages resulting therefrom, and said: "As the estimates included damages for injuries to supposed legal rights which had no existence, the court erred in not striking out the testimony when moved to do so."

There is no evidence in the record which fairly and reasonably tends to support the plaintiff's case; there-

fore, the court did not err in instructing the jury to find for the defendant.

A motion was heretofore made to dismiss the writ of error, consideration of which was reserved till the hearing. The motion will be overruled and the judgment will be affirmed.

*Affirmed.*