(No. 10958.)

MARY J. WARD, Plaintiff in Error, *vs.* VADA CAVERLY
*et al.* Defendants in Error.

*Opinion filed December 21, 1916—Rehearing denied Feb. 8, 1917.*

1. WILLS—*intention of the testator must be found by constru-
ing words of will in light of surrounding circumstances.* In con-
struing a will the intention of the testator as expressed therein
must prevail provided it is consistent with the settled rules of law,
and this intention must be found by construing the words employed
in the will itself in the light of surrounding circumstances.

2. SAME—*will may create life estate in personalty with power
of sale and a limited remainder.* A will may create a life estate
with power to sell and convey the fee before the determination of
the life estate, and may also create a life estate in personal prop-
erty of a durable nature with power of sale of the same, and with
a limited remainder, after the termination of the life estate, in
whatever is undisposed of.

3. SAME—*language of decisions construing wills must be read
in connection with the facts.* The language of a decision of the
Supreme Court construing a will must always be considered in
connection with the facts of the particular case and the points of
law raised on the record and necessary to the determination of the
case, and since wills are rarely, if ever, identical in wording and
often not even similar, decisions construing them are frequently
of little value as precedents.

4. SAME—*court should not construe will if the bill is to be dis-
missed.* If a bill to construe a will is to be dismissed for want of
equity the court should not construe the will.

5. SAME—*rule as to solicitor's fees in proceeding to construe
will.* Where the testator has expressed his intention in his will
so ambiguously as to make it necessary to call upon a court of
chancery in order to determine which of two or more adverse
claims to the same fund or property is valid, the cost of the liti-
gation should be borne by the fund or property in question.

6. SAME—*court of equity may hear bill to construe will without
question of trust being involved.* Under the act of June 5, 1911,
amending section 50 of the Chancery act, a court of equity may, in
a proper case, hear and determine a bill to construe a will notwith-
standing no question of a trust is involved therein.

7. SAME—*when wife takes a life estate and not the fee.* Where
a will devises, after the payment of debts and funeral expenses, all

the rest of the testator's property, real and personal, to his wife for life after the executor has sold the tools and machines in the testator's shop and the stock on hand, and provides that at the death of the wife "the property so devised to my wife, or so much thereof as may remain unexpended," shall be divided equally among the three named children of the testator, the wife takes a life estate in the real estate without power of sale and with remainder in fee to the children, but as to the personal property remaining after the payment of debts and funeral expenses, the wife may use it as she needs it, with remainder in what is unexpended to the children.

WRIT OF ERROR to the Circuit Court of Stark county; the Hon. CLYDE E. STONE, Judge, presiding.

T. W. HOOPES, and F. B. BRIAN, for plaintiff in error.

J. H. RENNICK, and W. W. WRIGHT, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed in the circuit court of Stark county by plaintiff in error, Mary J. Ward, for the construction of the will of Charles D. Ward, her deceased husband. Demurrers were filed by all the defendants, and one of them also filed an answer by his guardian *ad litem.* On a hearing the court entered a decree construing the will but dismissed the bill for want of equity. From that decree this writ of error was sued out.

From the allegations of the bill it appears that at the time of his death, December 24, 1914, testator owned certain lots, or portions thereof, in Toulon, in said county, and also personal property valued at about $1800, and that there were about $900 of debts against the estate. The will was dated February 22, 1913, and after providing for the payment of funeral expenses and just debts, reads:

"*Second*—After the payment of such funeral expenses and debts, I give, devise and bequeath unto my beloved wife, Mary J. Ward, all the rest, residue and remainder of my

276 — 27

estate, real, personal and mixed, of whatsoever kind or nature and wheresoever situated and whether owned by me now or acquired by me hereafter, for and during her natural life, after having disposed of the tools and machines in my shop and the stock on hands, which I direct shall be sold at either private or public sale, as my executor may think best.

"*Third*—At the death of my wife it is my will that all the property so devised to my wife, or so much thereof as may remain unexpended, shall be divided equally, share and share alike, between my three children, viz., Vada Caverly, wife of E. C. Caverly, Myrtle I. Brown, wife of J. H. Brown, and Charles W. Ward; and I direct that a guardian be appointed for my son, Charles W. Ward, and that his share shall be used as required in the support of my said son, and the guardian may use such portion of the principal towards his support as he may think advisable."

The last clause nominates J. H. Brown, his son-in-law, as executor, revoking former wills. The will was duly admitted to probate January 23, 1915, and Brown appointed executor. This bill was thereafter filed by the widow, praying that the will be construed as giving her power to sell the real estate, the right to expend the money derived therefrom, and the right to spend the proceeds of all the personal property after the payment of the debts, as well as the right to the income from all of said real and personal property during her lifetime so long as it should be unexpended or unsold, and that the fee simple title of said property was vested in the testator's three children, subject to be divested by the widow exercising said power of sale. The decree construed the will as giving the widow no power to sell the real estate, and that the fee simple title to the same was vested in the three children, subject to the life estate of the widow; that said widow was not entitled to the possession of the money of said estate after the payment of debts and expenses, but that said money, or any part thereof remaining unexpended at her death, should go to the said three children in equal

shares, and dismissed the bill for want of equity at the cost of plaintiff in error.

The fundamental rule in construing a will is that the intention of the testator as expressed therein must prevail, provided it is consistent with the settled rules of law. (*Bradsby* v. *Wallace,* 202 Ill. 239; *Wardner* v. *Baptist Memorial Board,* 232 id. 606.) This intention must be found by construing the words employed by the testator in the will itself in the light of surrounding circumstances, the court being entitled to hear such extrinsic evidence as will put it in the place of the testator. (*Abrahams* v. *Sanders,* 274 Ill. 452; *O'Hare* v. *Johnston,* 273 id. 458.) Without question, a will may create a life estate with power to sell and convey the fee before the determination of the life estate, and may also create a life estate in personal property of a durable nature with power of sale of the same, and a limited remainder, after the termination of the life estate, in whatever remains. *Hetfield* v. *Fowler,* 60 Ill. 45; *Kaufman* v. *Breckinridge,* 117 id. 305; *Walker* v. *Pritchard,* 121 id. 221; *Dickinson* v. *Griggsville Nat. Bank,* 209 id. 350.

Numerous cases have been cited by counsel on each side in support of their argument as to the proper construction to be put on this will, but while the general rules of construction must always be kept in mind, none of those rules can be absolutely decisive. The language of a decision must always be construed with reference to the facts of the particular case, and its authority is largely limited to those points of law raised on the record and necessary to the determination of the case, therefore in the interpretation of wills, as those instruments are rarely, if ever, identical in wording and often not even similar, the rules or precedents laid down in former decisions are frequently of little value. (*Black* v. *Jones,* 264 Ill. 548; *O'Hare* v. *Johnston, supra.*) We shall, however, refer to a few of the cases in which the wording of the will considered is most nearly like that of the will here involved.

In *Markillie* v. *Ragland,* 77 Ill. 98, the will provided that "whatever may remain of my estate, real and personal," at the death of testator's wife should descend to his heirs, the next clause giving the wife a life estate with power to manage the property at her discretion and deal with it as the sole owner, giving her power also, if she deemed expedient, to sell any portion of the property. It was there held that the wife had unlimited power of alienation but that she only took a life estate and not an estate in fee.

In *Green* v. *Hewitt,* 97 Ill. 113, the will provided: "After the payment of such debts and funeral expenses, I give and bequeath to my beloved wife, Elizabeth Thompson, the farm on which we now reside, [describing it,] also all my personal property of every description, so long as she remains my widow, at the expiration of that time the whole, or whatever remains, to descend to my daughter, Mary Thompson." The opinion holds that the will passed a life estate, only, to the widow in both the real and personal property, subject to be terminated by her marriage, and that the clause "whatever remains" did not apply to real estate but only to that species of personal property the value and use of which might consist solely in consumption, or to that class of personal property which might be worn out, lost or destroyed before the time of the widow's death.

In *Walker* v. *Pritchard, supra,* the will devised and bequeathed to the testator's wife certain real property, with authority to sell and convey the title and "convert the avails to her own use and benefit," and also bequeathed to her, during her natural life, certain personal property, and then provided that "at the death of my said wife all the property hereby devised or bequeathed to her as aforesaid, or so much thereof as may remain unexpended," should go to his two sons. It was there held that the widow had a life estate in both the real and personal property, with power of disposition, and that the sons took the remainder, or such parts as remained undisposed of at her death and could be identified.

In *In re Estate of Cashman,* 134 Ill. 88, the will bequeathed to the wife certain real estate during her natural life and also certain personal property, and further provided that she "may elect to have the above described real estate sold and conveyed by my executors hereinafter named * * * and accept in lieu thereof the sum of $3000 in money, to be accepted and held by her as above provided in reference to said real estate during her natural life, and that after her death all of the said property to her devised and bequeathed (or so much thereof as may remain unexpended) to be converted into money by my executors" and the net proceeds divided equally among his children. The decision holds that the wife had a life estate in the property, real and personal, with the right of use and the power of disposition, and that so much of the principal as was not used by her as her necessities demanded or her judgment dictated, and which should remain unexpended at her death, should be divided among the children.

In *Vanatta* v. *Carr,* 223 Ill. 160, the testator bequeathed to his wife all his estate, both real and personal, "during her natural life except as hereinafter mentioned," then bequeathed to a son certain personal property, and continued: "At the death of my wife, * * * whatever remains of the estate, both real and personal, to be transferred and belong as follows." The decision construed the words "whatever remains" as not enlarging the life estate given to the wife in the personal property, it not being necessary to construe what interest she might have in the real estate.

The wills in the cases referred to are none of them worded exactly like the will before us. An examination of those decisions will show that the court endeavored in each instance to construe the will so as to carry out the intention of the testator. In some of those wills there was no specific power given to the devisee, legatee or executor to sell and dispose of the property; in others such power was clearly given. In this will the power clearly given only extends to

the disposition of a portion of the personal property,—that is, the tools and machines in the shop and the stock on hand. If the executor or wife has the power of disposing of the rest of the property it must be as a necessary incident to the estate that was given the wife. *Welsch* v. *Belleville Savings Bank,* 94 Ill. 191; *Strickland* v. *Strickland,* 271 id. 614.

It is argued by counsel for defendants in error that the words "may remain unexpended," in the third clause of the will, refer to what may remain unexpended after the payment of the funeral expenses. This is not a reasonable construction of the will. The wife, by the first clause, was not given a life estate in any of the property that was necessary to pay the funeral expenses and just debts but was only devised and bequeathed that which should remain after such payment, and by the third clause it is clearly stated that the property so devised to the wife, "or so much thereof as may remain unexpended," should be divided among the children. The testator's intention is clear that the property he referred to as remaining unexpended was property in which he gave his wife a life estate, and not the property that was necessary to be used for the payment of the funeral expenses and debts. The testator's will was drawn up a short time before his death. He directed specifically that the tools and machines and stock on hand be sold by the executor. He understood that some of the property must be used to pay his debts. He also clearly intended, from the wording of the will, that the wife might expend certain of the *corpus* of the property for her own use. He left personal property to the amount of about $1800 and debts of about $900. It therefore follows as the most reasonable construction of the will that he intended that the wife should have the right to use, as her necessities required, any of the personal property after the payment of funeral expenses and debts; that any not so spent during her lifetime would go to the children as directed by the will. There being no power granted in the will for the sale of the real estate, obviously he did not

intend to refer to the real estate by the expression in the third clause "as may remain unexpended," for only the proceeds of the real estate if it was sold could be expended. The real estate itself could not be "expended." The wife, therefore, is only entitled to the use and income of the real estate during her life, the title in fee being in the children, subject to said life estate of the mother.

Plaintiff in error, by her counsel, contends that the court improperly charged the costs against her. The court undoubtedly erred in first construing the will and then dismissing the bill for want of equity. If the bill should have been dismissed for want of equity there would be no reason for construing the will. If the will required construction by the court, as it is evident it did, counsel for plaintiff in error was entitled to solicitor's fees. The general rule as to such fees is, that when the testator has expressed his intention in his will so ambiguously as to make it necessary to go into a court of chancery to get a construction of the will in order to determine which of two or more adverse claims to the same fund or property is valid, the cost of the litigation should be borne by the fund or property in question. (*Dean* v. *Northern Trust Co.* 266 Ill. 205; *Guerin* v. *Guerin,* 270 id. 239; *Strickland* v. *Strickland, supra.*) The trial court should have allowed reasonable solicitor's fees to counsel for plaintiff in error and charged said fees and the costs of the litigation, including the guardian *ad litem's* fees, against the property of the testator.

There was no trust involved in this will, but under the act of June 5, 1911, (Laws of 1911, p. 253,) courts of equity may hear and determine bills in equity to construe wills notwithstanding no question of a trust is involved therein. *Wakefield* v. *Wakefield,* 256 Ill. 296.

The decree of the circuit court will be reversed and the cause remanded, with directions to that court to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*